The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Be seated please. All right, the next case we're going to hear is Sneha Media & Entertainment v. Associated Broadcasting and Mr. Somerville. Good morning, may it please the Court. I am George Somerville, counsel for the appellants who are plaintiffs in the court below. There are three issues that I propose to address this morning. One is the standard or burden or allocation of proof under Rule 4K2. Second, the minimum contact standard under the Virginia Long Arm Statute. And third, the minimum contact standard under Rule 4K2. Now I go first to the Rule 4K2 question because... In the district court you invoked diversity jurisdictions? And federal question as well, yes, both. In the district court you did? Yes. Oh, I missed that, but I'm sorry. Federal question under the Copyright Act. We're claiming infringement of copyrights. All right, go ahead. Okay. And I go first to the 4K2 question because I think that's the major legal question that's presented here this morning. Do we have to reach that if we find the Virginia Long Arm Statute available? I'm sorry? Do we have to reach that 4K2 question if we find the Virginia Long Arm Statute is... Agreed, yes. And we are by no means waiving our argument under the Virginia Long Arm Statute. I go only to, I think it's the major legal issue that's presented with the seeming conflict between this circuit's Grayson and base metal decisions and the decisions of seven other circuits. And I think the primary question there is whether this panel is bound by the language in base metal and Grayson to the effect that the plaintiff has the burden of proving that a defendant is not subject to jurisdiction in any of the 50 states. I respectfully submit that this panel is not bound by those decisions, and here's why. Since filing the briefs, I have found the time to examine the briefs in both of those cases. The question that we are arguing today was never addressed in either of those cases. And the cases from other circuits that predated those that we're relying on were never cited in the briefs. So this court has never had the opportunity to consider the argument that the plaintiffs are making in this case. Well, I guess there may be a question as to whether or not the Grayson case is soundly reasoned, but if we have a holding that suggests that the burden is on you to show that jurisdiction couldn't be found in any of the 50 states, aren't we bound by that? Well, I think not, Your Honor, and here's why. There is a line of cases saying that a decision does not stand for a decision on a point that was not argued. Higgins v. Levine is the leading case from U.S. Supreme Court, which was a question of subject matter jurisdiction under 28 U.S.C. 1343. The court said, and this was in a footnote, I believe, in none of those cases where they had assumed that 1343 jurisdiction was available, in none of those cases was the issue squarely raised. So it was a question of first impression in Higgins. This court's grand jury subpoena decision in 2017 was similar. In a prior decision on a similar issue, the appellant argued only an issue of fact work product, did not argue that the materials were opinion work product. This court described the issue as one of opinion work product, but it was not argued so the previous decision, and this is what the court said. Can I interrupt you? I've just, it's troubling me, so we'll come back to this, but I have your complaint here, and you say court has jurisdiction over the matter described in this complaint, including jurisdiction over associated broadcasting pursuant to 28 U.S.C. 1332A2. That's it. I'm looking at five of the appendix. Well, I stand corrected on that, Your Honor. There was a federal claim pled, so whether federal question jurisdiction was expressed. Well, that leads me to my second question, is when you invoke jurisdiction of a court, aren't you bound by what the gate you go through? And the question is what do we do if the gate you go through is not, you don't have jurisdiction under, you don't have complete diversity in this case. Well, we do have complete diversity. Well, I thought NORD was an Indian corporation. NORD is an Indian corporation. And ABC is an Indian corporation. Yes. All right, that's not complete diversity. They're not citizens of a state. It's not complete diversity. I would ask leave of the court to submit a supplemental memorandum on that. I have not researched that question. Well, it doesn't look like anybody really did. It's just a little curious. There's a question of what do we do if we don't have the power to act. And the question is how you think. The second thing I want to get to, which gets back to what you were arguing, is preliminary to that. It seems to me that if the contacts that ABC had with the United States anyplace are insufficient under the Constitution, it doesn't matter whether we look under 4K or Virginia's long-arm statute or whatever. And in this case, ABC contracted with NORD, an Indian company, and NORD contracted with SNEA. If you just look at ABC's contacts with the United States, the best you got is this little casual meeting in Virginia, which involved the CEO and the CFO, which is unclear even what that amounted to. The rest, there's no further contacts. The ABC contracted with NORD, giving NORD worldwide distribution of its content outside of India. NORD contracted with SNEA, giving it American contacts. The only other thing is that SNEA helped ABC's reporters through the immigration, but that's not a thing. Occasional use of the SNEA office, I mean, the contacts are so minimal, I've never seen a case where we've asserted jurisdiction when you look at just ABC's contacts with the United States. And so I'd like you to address that, if you would, before you get into whether we're under Virginia long-arm or the 4K or whatever. Yes, respectfully, Your Honor. You have to get through the constitutional assertion of jurisdiction. Of course. And respectfully, Your Honor, I think the contacts are much more substantial than you are giving it credit. ABC's CEO has visited Virginia six or seven times, visited with plaintiff's CEO at his office three times. His CFO was on one of those trips. One of those visits, at least one, involved discussions of the plaintiff's interest in distributing ABC content in the United States, the very subject matter of the contract that we are here suing on. In the words of this court in CFA Institute, that was the genesis of the dispute. It initiated, again I'm quoting, a seamless series of business transactions. There was then the addendum after the assignment contract between Nord and Sneha. There was the addendum entered into between. I think that that contract's irrelevant. In other words, what Sneha did and Nord did, clearly ABC gave Nord the jurisdiction to handle its content outside of India, worldwide content. Nord entered into a contract with Sneha, giving it, I don't know what the geographical limitation was, North America or United States, whatever it was. The world outside of India. Gave it to Sneha? Yes. Okay, so Sneha has that from Nord. ABC never really, it left all this up to Nord and Sneha. In other words, we're going to bring in any corporation that has a couple of meetings with its executives in the United States about that. ABC sent, and this is admitted, at least 10 or 12 of its own personnel to the United States. It made it, it agreed in the addendum. To Virginia? We don't know that. That's by admission in the affidavit, 10 or 12 employees to the United States. Well, what if they were reporters just gathering news? I'm sorry? What if they were reporters gathering news? They were. They were anchor person and a camera. Well, that doesn't have any, I mean, ABC News sends somebody to Australia to pick up a story. Does that subject ABC News to a lawsuit in Australia or vice versa? If ABC has a substantial and ongoing. I'm saying reporters, sending some reporters into another country to pick up news for the business of ABC in India. If you do it once, I don't think that's enough constitutionally. You can't do it 10 times if you do it continuously. They're not doing business there. They're collecting news. That's the business of ABC, Your Honor. That means every one of our corporations can be sued anywhere, and any other international corporation that covers Washington can be sued. I mean, that's really a very aggressive posture. Every single European television station would be suable because they cover Washington regularly. The press is there continuously. They're not doing business. They're collecting news for their home business of distributing it to the customers there. Collecting and disseminating news is the business of ABC. Disseminating it to India. Yeah. Well, through this contract to disseminate. They didn't. They gave somebody else the right. We have to honor the contracts. Your Honor, let's look at the addendum. In the addendum, provided that NST or its affiliate will bear all local expenses for ABC's camera persons and anchors, the addendum also provided, well, it referred, and I don't have it handy in front of me. It referred to NORD and referred to Sneha Media in several occasions. There's no question that after the assignment, when NORD and ABC entered into the addendum, it was contemplating doing business in the United States. NORD was, not ABC. Yes, ABC was, Your Honor. Its content was going to go there. I mean, if I write a book in New York and they distribute the book in Russia, does that mean I can be sued in Russia because they have the book there? It's reporters. And I sell it to a distributor that I know is going to go to Russia? It was not only its content, Your Honor. It was reporters. It was its so-called hobby journalists. Basically, what you're arguing is that ABC in collecting its news through its reporters is enough to subject ABC, which is an Indian company, does entirely its business in India, is focused on India, is giving away the rights beyond India, but ABC basically is a big Indian company and they collect the news and provide their content in India by themselves and then they assign it to others to do outside the world. And you say that subjects ABC. They never intended to be here as a business pursuit. And chose to do business in the United States through the agency of Sneha Media. Well, that's not the, that's not, they're not agents. They're independent contractors buying the content. We have the independent contractors who were working on a joint enterprise. And that's an important concept in this court's case law, a collaboration between a foreign entity and a resident entity. It was also doing business through its reporters and its hobby journalists here in the United States. Well, let me ask you something. If reporters collecting news is not doing business for purposes of subject matter, personal jurisdiction, what else, what other business? They didn't bank here. They don't own property here. They don't, employees are not stationed here. They don't have an office here. They don't even intend to do the business here. They have Nord and Sneha doing it. Exactly. They didn't need to do any of those things in Virginia because Sneha was doing it on its behalf for the, for the benefit of their mutual enterprise in collecting news in the United States. There's a theory that corporations can, all through these contracting parties, you can trace the stream of contracts into the United States. ABC dealt with Nord and entered in that contract in India with Nord, an Indian corporation. And Nord was given basically distribution rights outside of India. Now, that's the way Nord designed its business, and the question is that isn't very much an invocation of American sovereignty or American law. And entered into an addendum to that contract, which explicitly provided that Sneha Media would assist with the development of ABC's news operations in the United States. What I'm asking, Your Honor, is that the court consider all relevant pleadings and allegations in the light most favorable to the plaintiff, assume credibility, and draw the most. We have a motion which was filed by ABC, which attached six exhibits. We had a notice of a hearing. We had an opposition in which you filed ten exhibits. There was a reply. There were three exhibits. And then there was a hearing where the exhibits were all argued before the district court, and any controversy of fact among the affidavits is then for the court to resolve, if there were any. So this is not the prima facie situation where you just file a paper, and the other person files a paper, and you get the presumption. We had the full development of a record. Everybody had a lot of time. There was an advance announcement of the hearing, and the hearing was conducted on August. The motion was filed in June. Respectfully, Your Honor, this was a prima facie situation. This is not an evidentiary hearing. What this court said in Grayson against Anderson. Grayson said it didn't need an evidentiary hearing. It could be an evidentiary, but didn't need one to have a hearing. These are bare bones affidavits. We never got a chance to cross-examine Mr. Prakash to develop the extent of his context. Deposition. We never had that chance. It was a motion under Rule 12b-2. It was argued to the court, and, you know. What do you mean you didn't have a chance? The motion was filed in early June. You filed an opposition. They filed a reply. The court scheduled a hearing. You could have brought witnesses to the hearing. You could attach more affidavits. Everybody rested on it. The court had, I can't count, 16, 20 exhibits from different people and affidavits. Your Honor, I want to save a couple minutes of my rebuttal time, but I want to point out that in Grayson against Anderson, this court said because the parties engaged in full discovery on the jurisdictional issue and fully presented the relevant evidence to the district court, that was an evidentiary hearing. That's not what happened in this case. This court also said in Grayson. Didn't Grayson also say that the hearing did not need to be an evidentiary hearing to constitute a hearing? It said it was an evidentiary hearing. Didn't it say it didn't need to be an evidentiary hearing to be constituted in a hearing for purposes of getting beyond the prima facie case? It said this, when the court addresses the personal jurisdiction question by reviewing only motion papers, affidavits, legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing. That's this case. All right. All right. We'll have you back on rebuttal. Mr. Johns? Yes. Good morning and may it please the court. Chris Johns for ABC. This case doesn't belong in the United States. There are multiple reasons to affirm dismissal. Judge Niemeyer, you pointed out the 12B1 issue, and if it hasn't been raised by the court, we'll raise it now. Second is that ABC isn't subject to personal jurisdiction in Virginia at all under any standard. Norton Sneha failed to properly invoke Rule 4K2, and even if they had, our contacts in the entire United States wouldn't support jurisdiction. Independently, the court may and should affirm a dismissal on form nonconvenience if it doesn't dismiss on some other ground. The heart of this dispute is India. The negotiations happen in India between Indian companies. The contract is subject to Indian law. There's parallel litigation going on there where Sneha and Nord are actually invoking the mandatory form selection clause to be referred to arbitration in India, and we ask the court to give them exactly what they want, which is an Indian forum. I'll address each point. Before discussing minimum contacts, I'll just briefly touch on the standard of review question. Judge Brinkman did hold an evidentiary hearing, and there are three reasons why there are arguments that counsel just made fail. One is that it wasn't that they were deprived an opportunity to have a fair hearing. They could have asked for jurisdictional discovery, and they didn't. So this case is unlike SEC versus Receiver for Rex Ventures where the party was denied jurisdictional discovery. They had every fair opportunity to discover more facts if they needed them. From our perspective, there really weren't many, if any, contested facts at all. Was it clear on the record what standard the court was applying? The court doesn't announce the standard, but counsel admitted that there might be an issue toward the end of his argument about whether it's preponderance or whether it's prima facie, so it was definitely an issue that was raised in that hearing. And the court in Grayson says, it writes, an evidentiary hearing requires, and I'm quoting, only that the district court afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal authorities. That's the holding. That's what the definition of an evidentiary hearing is. I thought that's why we'd shown up to court that day was to talk about the evidence and to talk about the arguments about them. Grayson opinion also talks about a line of demarcation related to motion papers and affidavits. So where is the line? Well, I think the difference is you hold a hearing, and we had an in-person hearing where we had an opportunity to present evidence. There was no in-person hearing in Grayson? Is that what you're saying? My understanding in Grayson, there was jurisdictional discovery in that case, and I'm unclear whether there was an actual hearing, but there definitely had been discovery in that case. So the hearing is what makes this case different? Yeah, I believe so, and that's the right result. What if the hearing had been solely on motion papers and affidavits? Well, the affidavits would have been evidence, and if we'd been arguing about the evidence and we'd argued our legal authorities, then I think that could be enough. There might be cases that are purely based on affidavits, and that would be the only evidence, jurisdictional evidence, that the court would need. And I don't like the phrase, you know, second bite at the apple, because I like apples and I like second bites, but you can't lie behind the log and say, well, gosh, I didn't get jurisdictional discovery, when you didn't ask for it. You can't come to court, to the Court of Appeals, and take up the court's time saying, well, gotcha, I get a do-over because I didn't ask for jurisdictional discovery. That's the wrong rule. And so the third issue, though, is that under any standard of review, whether it's prima facie or whether it's clear error, where we hold the plaintiffs to a preponderance, there's not really, if the court looks, there's really not that many, if any, factual disputes here. I think there are situations like the badges of the ABC hobby journalists, that those badges show up and they have Sneha's Virginia address on them, but there wasn't really a factual dispute there. All we did is we came in and we told the rest of the story, saying that that wasn't our idea, and that under Hansen v. Denkla, they decided to do this and create the badges themselves. There's no evidence that we were involved in creating the badges and trying to purposely avail ourselves of the protection of Virginia law. So I'd like to just touch real quickly on the rest of the minimum contacts analysis. There are no offices, no employees, no employees, no independent contractors, including these hobby journalists, ever in Virginia covering any story. There's nothing in the record saying that they've ever even stepped foot in the state of Virginia, nor has ABC ever solicited business here, engaged in business, or had any contracts with anybody in Virginia. I think the best that they've got is that one conversation that happened sometime between 2002 and 2011 between the two CEOs of the company that was primarily a social visit. And by the way, social visits under the Fifth Circuit's case, Hold Oil v. Harvey, don't count in the minimum contacts analysis. It has a social visit. Mr. Annum Reddy, who's the CEO for Nord, tells our client that he's interested in distributing ABC's content in America, so it wasn't even that Mr. Prakash, ABC's CEO, was going and soliciting business there. It was the reverse. And again, under Hansen v. Denkla, unilateral activity like that can't create a fishhook to draw us into the United States. One of the cases that your learned counsel, your adversary, cites is this tire engineering case we decided some years ago where a defendant did not visit the home state of Virginia or initiate contact with that party in Virginia, but we nonetheless said that because of their, quote, extensive collaboration with that party, and it was also the nature of the accident in that case which involved a fraud, but setting that aside for the moment, extensive collaboration with the party in Virginia, that that was enough to warrant personal jurisdiction. I suppose the argument is being made here that even though your client may not have set foot in Virginia, may not have spent any significant amount of time in Virginia, that there was that sufficient collaboration to warrant the same result here. What's different about this case and that one? Well, a couple of things. I think in that case there was extensive contacts going on. If we run through our contacts, we've got one conversation. We've got the addendum that our friends on the other side have pointed to that says that there was an obligation to send one camera person and one reporter to the United States who, by the way, didn't go to Virginia, went someplace else. There's that. There's an invitation letter for some reporters to come into the country, but even when you're dealing with the contract situation, just an exchange of communication or some coordination in carrying out a distribution contract like this under Moncrief Oil versus OAO Gazprom out of the Fifth Circuit as well, just doing some communication and collaboration about your contract obligations, that in and of itself is not enough to weigh on the minimum contacts analysis. It might be relevant to general jurisdiction, but we don't have any specific jurisdiction here. What about the wire transfers that ABC received from SHEA? Yeah, it's a good... And also they're assisting in getting visas for ABC. I'll address the wire transfers. The DTEX case out of the District of South Carolina put together a number of cases saying that wire transfers, receiving a wire transfer does not count in the minimum contacts analysis. If you decided to Venmo me some money in Texas, for example, send some money through your cell phone, that wouldn't subject you to personal jurisdiction in Texas. Much more is required. And I've forgotten, Judge Floyd, your second question. Where SHEA assisted obtaining work visas for ABC employees. Yeah. So I'm aware of two invitation letters where SNEHA helped with that. One, I'd say there isn't a nexus to the particular claims that the plaintiffs are alleging. There's no question that... Well, I don't think there's any argument that those invitation letters had anything to do with the claims that they're asserting. So that's point number one. The second is those invitation letters, we had one... From those, we had one set of reporters come to the United States and they went to Chicago and Houston. They didn't even come to Virginia. And as far as... I'm happy to address any of the other alleged minimum contacts, but there's just not much there there. On the issue of our contacts with the entire United States and whether they're able to invoke Rule 4K2, our position is that they can't do that, that under base metal and Grayson... I mean, I can quote base metal, Judge Wilkinson's opinion there. He says, A plaintiff who seeks to invoke Rule K2 as a basis for jurisdiction must show that the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state. They didn't even make an attempt to argue that NCAS is not subject to personal jurisdiction in any state. Same here. They made no argument that we were not subject  So the problem with both base metal and Grayson, even if, as the appellants have suggested, even if the court were to follow, you know, depart from its rule and follow something more akin to the First Circuit's approach, in that case, the First Circuit said that the plaintiff must certify that based on information readily available to plaintiff and its counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state. That's Swiss American Bank. Here, plaintiffs didn't make any such certification, so they can't invoke Rule 4K2. But even if they did, our argument is that they have an alleged contacts in the United States that support their copyright claim. And I think it's important to remember, my understanding of the rule is that it's not just that you be subject to some specific jurisdiction somewhere, it's that it has to have a nexus, it has to have a relationship, it has to have given rise to the federal claim that they're asserting. And here, they've alleged a copyright claim, and I don't see any minimum contacts, even in the whole United States, that have a nexus with that claim. Independently, the court could affirm on form nonconvenience. A court of appeals may affirm on any ground supported by the record, even if not relied on by the district court. Our friends on the other side have argued that the district court rejected the form nonconvenience argument. That's not accurate. The court can read what Judge Brinkham actually did. She expressed grave concern about having to apply Indian law, about the fact that there were documents, the majority of these documents were in India, that our witnesses were there, that our entire operation was there, that it would be a burden on the defendant to have to litigate here in the United States. And it's important to remember, when dealing with form nonconvenience with foreign defendants, we have to give some extra consideration to the fact of the burden on the defendant. We've got an Indian venue that's available and adequate. The parties are all there. They've actually got another party, Dish Network, who's also there, who is relevant to the dispute. And it's not only the Fourth Circuit's rule that you can affirm on any ground supported on the record, but it's in the form nonconvenience context, AAR International versus Nimelius Enterprises, Seventh Circuit said that the District Court could reach the form nonquestion if it hadn't, even if, excuse me, that the Court of Appeals could reach the form nonquestion as long as it was adequately briefed below and the resolutions seemed fairly clear. I think regardless whether the court wants to resolve this case under... Oh, I forgot one more thing. They argue that we can't raise a form selection clause because in the form nonconvenience context, the existence of a form selection clause asking for arbitration, that's generally given controlling weight in all but the most extraordinary of circumstances. The other side argues that we're not able to raise it, but there's case after case. Magi 21 from the Second Circuit, Minetti-Ferro from the Ninth, Coastal Steel from the Third, ABC Nederland from the Second, the Watkins case that we've cited, this is all on our brief on pages 32, 33, the Watkins case from the Eastern District of Virginia, all say that when there's a party, when there's a non-party, is allowed to raise the form selection clause. And we think it's relevant and something that the court should consider. So whether the court would like to dismiss for lack of personal jurisdiction, for form non, for the failure to raise 4K2 correctly, for the failure to show minimum contacts that have a nexus with the claims they're asserting, even if we consider the entire U.S., or for lack of subject matter jurisdiction, for failure to plead federal question. And then I guess there's one last one. There's, I think, a question after Su Campo, whether it's appropriate to raise a form selection clause as a basis for dismissal under 12B1.  that are more established for the court to affirm dismissal in this case. But we ask the court, again, to give the Nord and Sneha what they've asked for in India, which is an Indian forum. Unless the court has any questions, I'll sit down. All right. Thank you, Mr. Johns. Mr. Somerville. Thank you, Your Honor. I will try to touch on a few of the key points as quickly as I can. First of all, as the court has pointed out, physical presence in the forum state is not necessary. That's tire engineering. It's also Burger King. This court has said several times that if there is a meaningful relationship based on contract with substantial collaboration with a resident party, then you have long-arm jurisdiction. The invitation letters were part of the parcel of the overall joint enterprise. I think if a plaintiff does not meet the prima facie standard, if that's the court's conclusion, that was not the district court. Well, the district court never articulated the standard that it was applying. Defendant? You know, and, Grayson, just to be somewhat clear on this, we anticipated that if the court did it on the papers and just did it in its chambers, it had to recognize the prima facie standard. But it says, To be sure, we have previously stated that if a court requires a plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it must conduct an evidentiary hearing. But contrary to plaintiff's position, an evidentiary hearing does not automatically involve or require live testimony. Rather, an evidentiary hearing requires only that the district court afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments. And that is, I think that's what happened here. I think the court gave the parties the opportunity to put in their affidavits, argue the affidavits, even witnesses if you wanted, and to hear your arguments. And once the court has provided that opportunity, it must hold the plaintiff to its burden of proving facts beyond a preponderance of the evidence. I don't know if it makes a lot of difference in this case, I must tell you. I think that in terms of Virginia, we have that meeting that I think both of you discussed a little bit differently. And we have the invitations. I don't think there really is anything else that says they intended to do business in Virginia, to subject themselves to the laws in Virginia. They had this social meeting in which there was a casual conversation about this. That's their only reason for knowing each other. And that was it. It was the genesis of the dispute. It initiated a substantial, long-going, went on for several years before ABC breached and canceled the contract. If a plaintiff does not meet the prima facie standard, in any case, plaintiffs are going to have to prove jurisdictional facts by a preponderance sometime, either in a pretrial evidentiary hearing or at the trial. But if the court finds that the plaintiff has not carried a prima facie case, the next step is to say, all right, see if you can find the evidence that you need to make a case by the preponderance. And if the court agrees with the district court, I respectfully ask that you give us that opportunity. Mr. Johns referred to the First Circuit's decision in 4K2. We're not relying on the First Circuit. We're relying on the 5th, 7th, 9th, 11th, DC, and federal circuits. The First Circuit was the first circuit to address this issue. It adopted a burden-shifting paradigm similar to McDonnell-Douglas. But every other court since then, beginning with the 7th and ISI, has said that the defendant can avoid 4K2 jurisdiction simply by saying, I'm subject to jurisdiction in Oklahoma or wherever. Cases always can be distinguished factually. But the inquiry is flexible. It is not mechanical. I'm quoting from this court's cases. It's case by case. And it's based on the totality of the facts. And finally, the point that I was looking for when I was up before in the addendum, and the best copy is at page 69 in the appendix, provides that all overseas activities of ABC, not NORD, but ABC's overseas activities, including hobby journalists, marketing, and TV9 personnel, and I quote, need to work through our affiliate company, Sneha Media. I have nothing further. All right. Thank you. We'll come down in Greek Council and then proceed on to the last case.
judges: Paul V. Niemeyer, Albert Diaz, Henry F. Floyd